IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA MANGA,
    *Plaintiff*,

    v.

EDWARD KNOX, JR. et al.,
    *Defendants*.

Civil Action No. ELH-17-1207

## MEMORANDUM OPINION

In this employment discrimination case, the self-represented plaintiff, Maria Manga, has

sued her former employer, the U.S. Small Business Administration ("SBA" or the "Agency");

the SBA's Administrator, Linda McMahon; and plaintiff's former supervisor, Edward Knox, Jr.

ECF 5 (Amended Complaint); ECF 12 (Motion to Amend Caption). Plaintiff alleges that she

suffered discrimination on the basis of her national origin (Cameroon); her race (Black); as well

as retaliation. ECF 5. Suit is founded on Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. §§ 2000e to 2000e-17. *See* ECF 1-1 (Civil Cover Sheet) at 2.[1]

Pursuant to Fed. R. Civ. P. 12(b)(1), defendants McMahon and the SBA moved to

dismiss plaintiff's Amended Complaint, on the ground that plaintiff failed to exhaust her

administrative remedies. ECF 23. The motion is supported by a memorandum of law (ECF 23-

1) (collectively, "McMahon Motion"), and one exhibit. Plaintiff opposes the McMahon Motion,

and submitted numerous exhibits. ECF 27 ("First Opposition"). McMahon replied. ECF 32

("McMahon Reply"). Knox also moved to dismiss plaintiff's claims as to him, under Fed. R.

---

[1] Plaintiff initially filed suit in the U.S. District Court for the District of Columbia. ECF 1. However, following plaintiff's filing of an Amended Complaint (ECF 5), Judge James E. Boasberg of that court determined that the District of Columbia was the improper venue for the case, and ordered the transfer of the case to this district. ECF 7.

Civ. P. 12(b)(6). ECF 30. His motion is supported by a memorandum of law. ECF 30-1 (collectively, "Knox Motion").[2] Plaintiff did not respond to the Knox Motion.

After the filing of the Knox Motion and the McMahon Motion, plaintiff submitted "Plaintiff's Privacy Act Complaint." ECF 37 ("Privacy Act Complaint" or "PAC"). The Privacy Act Complaint alleges three new causes of action against the SBA, allegedly pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act"), and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff did not provide a legal basis for the filing of these new claims within the existing suit, but I shall construe them as a supplement to the Amended Complaint.

Defendants jointly moved to dismiss the Privacy Act Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 43. The motion is supported by a memorandum of law (ECF 43-1) (collectively, "PAC Motion") and two exhibits. Plaintiff opposes the PAC Motion, and submitted several more exhibits. ECF 49 ("Second Opposition"). Defendants replied. ECF 51 ("PAC Reply").

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant all three motions.

## I. Factual and Procedural Background[3]

Plaintiff is "a female native born of Cameroon in Africa, and a Naturalized Citizen of the United States of America." ECF 5 at 1. She alleges that she is "currently employed, at least [she] still believe[s] so," as a Business Opportunity Specialist at the SBA, where she began work

---

[2] Although McMahon and Knox filed separate motions to dismiss, all defendants are represented by the same counsel. *See* Docket.

[3] As discussed, *infra*, in view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). I am also mindful that plaintiff is *pro se*. Therefore, I must construe her submissions liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

in 1998. ECF 5 at 1. Despite this assertion, plaintiff also alleges that on November 2, 2016, she was terminated from her position. *Id.* at 9. Plaintiff formerly worked at the Washington, DC office of the SBA, but was transferred to the Baltimore field office in July 2014. *Id.* ¶¶ 11, 13. According to plaintiff, she was transferred out of the DC office in retaliation for filing a complaint of discrimination against her former supervisor, Luz A. Hopewell. *Id.* ¶¶ 9-11.

Plaintiff asserts that from her "first day in [the] Baltimore office, July 7, 2014," until October 4, 2015, plaintiff's working relationship with Knox, her supervisor in Baltimore, was strained. *Id.* ¶ 13. She alleges that Knox assigned and then withdrew projects from plaintiff without explanation, and that Knox "demoted" plaintiff, assigning her to perform clerical duties rather than more substantive work. *Id.* Knox allegedly promoted plaintiff's coworkers and gave them "cash rewards," but never promoted plaintiff or increased her salary. *Id.* ¶¶ 14-15.

On one occasion, Knox requested a volunteer to lead a training program for the public. *Id.* ¶ 13. Plaintiff was the only person to volunteer. *Id.* As a result, Knox allegedly canceled the program. *Id.* Manga asserts, *id.*: "The reason Mr. Knox told me was my pronunciation of some English words was not standard American."

Plaintiff's alleged mistreatment by Knox "compounded [her] stress level," and she "collapsed near Mr. Knox's office on October 29, 2015." *Id.* ¶ 15. According to plaintiff, Knox called her into his office as she was about to leave for the day, and "wanted to talk to [her] about [her] productivity." *Id.* Plaintiff asked to postpone the conversation until the next day to avoid missing her train. *Id.* She alleges that Knox "firmly replied and threatened [her] that [she] sit to talk with him or he [would] write [her] up for insubordination." *Id.* Plaintiff then collapsed and was taken by ambulance to a hospital. *Id.* As a result, she maintains that she was unable to

return to work for a period of time. ECF 5, ¶ 15. However, Manga alleges that "Mr. Knox's conclusions were that[] [she] lacked integrity and [she] was faking it or pretending." *Id.*

In January 2016, defendants allegedly placed plaintiff on leave with no pay. *Id.* at 9. And, on November 2, 2016, plaintiff alleges that she was finally terminated. *Id.* According to plaintiff, "this is all because [plaintiff is] different from [Knox] and others like him. Most importantly, because [plaintiff] [has] filed or [has] a history of filing a complaint." *Id.*

Following her termination, plaintiff alleges that she "could not get a job because of lack of training." ECF 37 at 2. According to plaintiff, she has requested "her files" from a Human Resources Representative at the SBA, to which she "requires access due to pending federal employment." *Id.* However, "no documents have been released." Plaintiff asserts that she has applied for a total of 102 jobs but has been rejected "due to Bad Credit report." *Id.* Her bad credit has purportedly prevented her from getting jobs that require a security clearance. *Id.* at 3. Plaintiff also alleges that as a result of being unemployed, she has suffered "mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities." *Id.*

## II.     Standards of Review

### A.  Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id.*

Defendants bring a factual challenge because they argue that plaintiff failed to exhaust her administrative remedies under Title VII. ECF 23-1 at 5-7. Defendants contend that the failure to exhaust deprives the Court of subject matter jurisdiction as to these claims. *Id.*

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of

those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014); *Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009).

However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004). To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."

*Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

## C. Exhibits

Plaintiff submitted numerous exhibits with her initial Complaint. These include an assortment of letters and emails concerning plaintiff's employment with the SBA, presented without context or explanation. *See, e.g.*, ECF 1 at 34 (email chain between plaintiff; Kevin Zieleniewski, Esq., plaintiff's former counsel; and Stephen D. Umberger, District Director of the Baltimore office of the SBA). Manga also attached a letter addressed to plaintiff from Mary E. Palmer, Chief Administrative Judge of the Baltimore Field Office of the Equal Employment Opportunity Commission ("EEOC"), dated October 3, 2016. ECF 1 at 6 ("Palmer Letter"). The Palmer Letter appears to respond to documents mailed by plaintiff to the EEOC on September 26, 2016. *Id.* However, those documents do not appear to be attached to the Complaint. In the

Palmer Letter, the EEOC informed plaintiff that it "does not have jurisdiction over the matter of which [plaintiff] complain[s] because there is no case currently pending before" the EEOC. *Id.*

Perhaps in response to the Palmer Letter, plaintiff submitted a letter dated October 17, 2016, from plaintiff to "The Director" of the EEOC, with the subject line "Complaint of Discrimination and Retaliatory Adverse Action against me based on my National Origin and Ancestry." *Id.* at 7-15 ("EEOC Complaint of October 17, 2016"). The numbered paragraphs of this letter mirror almost exactly the allegations of plaintiff's Amended Complaint (ECF 5). None of the other documents attached to plaintiff's Complaint are dated later than October 17, 2016. Plaintiff also submitted an undated letter addressed to "Sandra Winston," with the subject line "Amendment to the Charges of Discrimination." ECF 1 at 36-28. The allegations in this letter largely overlap with the allegations of the EEOC Complaint of October 17, 2016, and the Amended Complaint.

Plaintiff did not attach any of these documents to her Amended Complaint. ECF 5. However, I shall consider the attachments to the Complaint to be incorporated into the Amended Complaint.

The McMahon Motion includes one exhibit: the Declaration of Gaye T. Walker, Deputy Assistant Administrator at the SBA. ECF 23-2 ("Walker Declaration"). Walker is responsible for maintaining records of formal and informal Equal Employment Opportunity ("EEO") claims filed by agency personnel. *Id.* ¶ 4. She avers that as of August 31, 2017, plaintiff had made no formal or informal EEO complaints since September 2013. *Id.* ¶ 6. The Walker Declaration also contains a table listing plaintiff's prior formal and informal complaints with the SBA. *Id.* at 2. Because the Walker Declaration supports McMahon's factual challenge to the Court's subject matter jurisdiction, I shall consider it.

### III.    Discrimination Claims

### A.  Title VII

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal–Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).  It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provision.  *See* 42 U.S.C. § 2000e-3(a); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 415 (4th Cir. 2015).

In a retaliation case, the Fourth Circuit has said that, to establish a prima facie case of discrimination under Title VII, a plaintiff must show: "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'"  *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)); *see also Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice when they

amount to a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Hoyle,* 650 F.3d at 333-34.

The Supreme Court has explained that the definition of "adverse employment action" in the context of a claim for retaliation is not limited to the definition as used in the context of a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*BNSF*"). Rather, "the adverse action component of Title VII's antiretaliation provision can be satisfied by showing that the employer took 'materially adverse' action in response to an employee engaging in a protected activity, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Williams v. Prince William Cnty., Va.*, 645 F. App'x 243, 245 (4th Cir. 2016) (quoting *BNSF*, 548 U.S. at 68). Conduct as seemingly "trivial" as a "change in an employee's work schedule" or a "supervisor's refusal to invite an employee to lunch" may, under some circumstances, constitute adverse employment actions in the context of retaliation. *BNSF*, 548 U.S. at 69.

With respect to the causation element, plaintiff must show that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citation omitted). "A plaintiff who can show that retaliation 'was the real reason for the [adverse employment action],' . . . will necessarily be able 'to show that the harm would not have occurred in the absence of - that is, but for - the defendant's conduct' . . . ." *Id.* at 252 (citations omitted) (alteration in *Foster*).

As to the third element, there must ordinarily be "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Thus, "[a] lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two." *Id.* (internal quotation marks and citation omitted). Absent temporal proximity between the protected activity and alleged retaliation, the court "may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotation marks and citation omitted). Notably, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

### B.  Defendant Knox

As a threshold matter, Knox moves to dismiss all of plaintiff's claims against him, asserting that Title VII does not provide for actions against individual defendants. ECF 30-1 at 3. Indeed, Congress and the Fourth Circuit have made clear that in a Title VII action against a federal agency, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c); *see Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (holding that "supervisors are not liable in their individual capacities for Title VII violations"). Therefore, plaintiff's discrimination claims against Knox, in his individual capacity, are subject to dismissal.

## C. Exhaustion

### 1.

Title VII's prohibitions apply to federal employees as well as those in the private sector. *Nielsen v. Hagel*, 666 F. App'x 225, 227 (4th Cir. 2016) (citing 42 U.S.C. § 2000e-16(a)).[4] Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. General Services Admin.*, 425 U.S. 820, 832 (1976) (federal employees); *see also McCray v. Maryland Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Notably, "[t]he administrative remedies available for federal employees are significantly broader" than those available to employees in the private sector. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc). *See* 42 U.S.C. § 2000e-16(c) (setting forth the conditions under which a federal employee may initiate a civil suit under Title VII).

Federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult [an EEO] Counselor [in the employee's federal agency] prior to filing [an agency EEO] complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a); *see also Nielsen*, 666 F. App'x at 227; *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237 (4th Cir. 1987). Moreover, the employee "must initiate contact with a Counselor within 45 days of the date of the

---

[4] Title VII initially did not protect federal employees. *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer"). In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted her administrative remedies "may file a civil action as provided in section 2000e-5 of this title" against the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *see Bullock v. Napolitano*, 666 F.3d 281, 283-84 (4th Cir. 2012), *cert. denied*, 568 U.S. 882 (2012).

matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see also Nielsen*, 666 F. App'x at 227; *Verrier v. Sebelius*, CCB-09-402, 2010 WL 1222740, at *8 (D. Md. Mar. 23, 2010).

The EEO counselor must "conduct an initial counseling session, during which the counselor must inform the aggrieved party in writing of his rights and responsibilities, and offer the employee the option of pursuing alternative dispute resolution (ADR)." *Nielsen*, 666 F. App'x at 227 (citing 29 C.F.R. §§ 1614.105(b)(1), (2)). Counseling may lead to the withdrawal of the claim or a settlement agreement between the employee and employer. *See* 29 C.F.R. § 1614.504(a); *Campbell v. Geren*, 353 F. App'x 879, 882 (4th Cir. 2009). If the employee chooses to pursue ADR, the EEO counselor must conduct a "final interview" within 90 days of the initial interview. 29 C.F.R. §§ 1614.105(d), (f). At the end of the 90 day period, if the matter is not resolved, "the counselor must issue a written notice of right to file a formal complaint within the agency." *Nielson*, 666 F. App'x at 227 (citing 29 C.F.R. § 1614.105(d)-(f)). Thereafter, the aggrieved party must file a formal complaint with the agency within 15 days of receipt of notice from the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(b).[5]

Once the agency takes "final action" on the formal complaint, the aggrieved party may appeal the decision to the EEOC or, within 90 days, file a civil action. *See* 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.110, 1614.401, 1614.407(a); *see also Nielsen*, 666 F. App'x at 228. If an employee appeals to the EEOC, the EEOC's Office of Federal Operations ("OFO") "reviews the record, supplements it if necessary, and then issues a written decision." *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005) (citing 29 C.F.R. § 1614.404-05). A decision by the OFO is considered to be final, "triggering the right to sue" in court. *Scott*, 409 F.3d at 468 (citing 29 C.F.R. § 1614.405(b)). The employee must initiate the civil lawsuit "[w]ithin 90 days of receipt

---

[5] Untimely complaints are subject to dismissal, but the 15-day time limit is also subject to "waiver, estoppel, and equitable tolling." 29 C.F.R. § 1614.604(c).

of the [EEOC's] final decision on an appeal." 29 C.F.R. §§ 1614.407(a), (c). But, if the agency fails to issue a final decision within 180 days of receipt of the formal complaint, or if the EEOC fails to rule within 180 days of the filing, the aggrieved party may also sue. 29 C.F.R. §§ 1615.407(b), (d).

An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust her administrative remedies and is generally barred from filing suit. *See, e.g.*, *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *see also Frank v. England*, 313 F. Supp. 2d 532, 536 (D. Md. 2004) ("Before an employee has standing to pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination."). In the Fourth Circuit, Title VII's exhaustion requirement functions as a jurisdictional bar where a plaintiff has failed to comply with it. In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." Thus, failure to comply generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221

F.3d 648, 653 (4th Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012).

To determine whether a plaintiff has properly alleged a claim that satisfies the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added). Notably, a court cannot consider matters that were not properly raised during the EEOC process. In *Jones*, 551 F.3d 297, 300 (4th Cir. 2009), the Court said: "'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" (Quoting *Evans*, 80 F.3d at 963). *See also Abdus-Shahid v. Mayor & City Council of Balt.*, 674 F. App'x 267, 275-76 (4th Cir. 2017); *Sydnor*, 681 F.3d at 595. Similarly, the Court said in *Evans*, 80 F.3d at 962-63: "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *See also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation.").

To be sure, courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). But, courts are "not at liberty to read into administrative charges allegations they do not contain." *Id.* As the Fourth Circuit recently said, "liberal construction only stretches so far." *Nnadozie v. Genesis Healthcare Corp.*, ___ F. App'x ___, 2018 WL 1830935, at *7 (4th Cir. April 17, 2018). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Balas*, 711 F.3d at 407-08 (citation omitted).

Nevertheless, "an administrative charge of discrimination does not strictly limit a Title VII suit that may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Sydnor*, 681 F.3d at 594 (internal citations and quotations omitted). As the *Sydnor* Court said, *id.* at 595: "The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' . . . not precisely the same. . . ." (Citation omitted). *See also McCray*, 662 F. App'x at 224; *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 669 (4th Cir. 2015); *Jones*, 551 F.3d at 300; *Evans*, 80 F.3d at 963.

**2.**

No charge of discrimination is properly before the Court. Although plaintiff attached the EEOC Complaint of October 17, 2016, to her original Complaint (ECF 1 at 7-15), it does not appear that this charge was ever fully exhausted. There is no indication in any of plaintiff's filings that the EEOC Complaint of October 17, 2016, was received or processed by the EEOC. Nor does plaintiff indicate that she received notice of her right to sue on the EEOC Complaint of October 17, 2016. As a general rule, complainants who may file a complaint directly with the EEOC (which federal employees may not) must allow the EEOC at least 180 days to investigate a complaint before filing suit in federal court. *See* 42 U.S.C. § 2000e-5(f)(1). Yet, plaintiff's Complaint was filed in federal court on December 7, 2016, only 51 days after the date of the EEOC Complaint (October 17, 2016).

Along with her First Opposition, plaintiff attached a letter she wrote to Sandra Winston, the "Director of EEO" at SBA, dated August 23, 2016. ECF 27-1 ("Charge of August 23, 2016") at 1-2. It bears the subject line "Charges of Discrimination." *Id.* at 1. As with the EEOC

Complaint of October 17, 2016, there is no indication that this letter was ever received or processed by the SBA. As noted, McMahon submitted the Walker Declaration, in which Walker asserts: "The Agency has no record of Maria Manga opening a formal or informal complaint in an EEO matter or meeting with an EEO counselor since September 19, 2013." ECF 23-2, ¶ 6. The Walker Declaration is dated August 31, 2017, more than ten months after the EEOC Complaint of October 17, 2016, and a year after the date of the Charge of August 23, 2016. Even assuming plaintiff's Charge of August 23, 2016 was properly sent to the SBA, absent a final action from the Agency plaintiff was required to wait at least 180 days before filing suit in federal court. *See* 42 U.S.C. § 2000e-16(c). She did not do so.

The Charge of August 23, 2016, addresses a number of the same incidents alleged in plaintiff's Amended Complaint, and states: "Mr. Knox knowingly and willfully harassed [plaintiff] by repeatedly calling [her] at odd hours to return to work even while knowing [she] was under the Doctor's care." *Id.* at 1-2.

Also attached to plaintiff's First Opposition, along with a host of other documents, is a copy of the SBA's Brief in Opposition to Complainant's Appeal, dated March 2, 2017. ECF 27-15. It appears that this brief was submitted by the Agency in response to an appeal noted by plaintiff from the August 23, 2016 decision of Administrative Law Judge Kevin McEvoy. *See id.* at 2. The SBA Case Number listed on the brief is 06-13-045, which corresponds to one of the case numbers listed on the table of plaintiff's prior complaints, set forth in the Walker Declaration. *See id.*; *see* ECF 23-2 at 2. According to the Walker Declaration, SBA Case Number 06-13-045 was initiated by plaintiff on July 29, 2013, and closed on September 30, 2016. ECF 23-2 at 2.

Along with plaintiff's Second Opposition, ostensibly responding to the PAC Motion, plaintiff attached what appears to be the decision of the OFO in regard to SBA Case Number 06-13-045. ECF 49-4 ("OFO Decision") at 2. The OFO Decision, which affirmed the Agency's final order adopting the decision of the Administrative Law Judge (*id.* at 4), is dated July 14, 2017. *Id.* at 5. It addresses only plaintiff's claims arising in 2013, and does not concern any events thereafter. *See id.* at 2-3. The OFO Decision also informs plaintiff of her right to file a civil action within 90 days of receipt of the OFO Decision. *Id.* at 4-5.

Plaintiff did file a separate suit following her receipt of the OFO Decision. *See Manga v. McMahon et al.*, ELH-17-3181. That case was initially filed in this Court, concerning events in Washington, D.C. It was transferred by consent of the parties to the U.S. District Court for the District of Columbia. *See* ELH-17-3181 at ECF 12; ELH-17-1207 at ECF 44.

None of the documents submitted by plaintiff suggest that the claims on which her Amended Complaint is based were properly exhausted. To the extent plaintiff seeks to sue on the basis of her 2013 EEO complaint, the claims raised in plaintiff's Amended Complaint did not arise until after that charge was filed. *See* ECF 5, ¶ 1 (stating that defendants began discriminating against plaintiff "beginning July 7, 2014"). And, if plaintiff believed she could administratively exhaust her claims simply by sending them in a letter to the Agency, as she did with the EEOC Complaint of October 17, 2016, she was mistaken. As noted, an agency must "take final action" before a complainant may sue in federal court. *See Scott*, 409 F.3d at 468. There is no suggestion that the Agency took final action on plaintiff's EEOC Complaint of October 17, 2016. To the contrary, defendants have presented evidence that the Agency has no record of this complaint. *See* ECF 23-2 at 2.

Accordingly, I conclude that plaintiff has not exhausted her administrative remedies with regard to the claims raised in her Amended Complaint. As a result, those claims are subject to dismissal, without prejudice.

## IV. Privacy Act Complaint

### A. Plaintiff's Contentions

Plaintiff's Privacy Act Complaint raises three additional causes of action against defendants. ECF 37. The first, styled "Privacy Act/Freedom Act—Denial of Access Records," appears to be based on FOIA. *Id.* at 2. Plaintiff alleges that she requested "her files" but that "no documents have been released." *Id.* And, plaintiff alleges that she "has exhausted all required and available administrative remedies." *Id.*

Plaintiff's Second Cause of Action, "Privacy Act – Improper Dissemination," alleges that on July 7, 2013, plaintiff's former supervisors "decided to send [plaintiff] to SBA, District Office without due process." *Id.* Plaintiff asserts that she "was transferred involuntarily even though she was harassed and physically assaulted by Eugene Stewman." *Id.* She adds, *id.*: "Plaintiff was constantly harassed and retaliated by Edward Knox, Jr. because of prior EEOC activities."

The Third Cause of Action in the PAC is "Privacy Act – Character Defamation." *Id.* Plaintiff appears to allege that as a result of being terminated from her position, she has been unable to pay her bills and her credit has suffered. *Id.* at 2-3. She contends that she "is having a **BAD CREDIT** as being a hard-core **CONVICT OR CRIMINAL** because of Knox['s] malicious intent." *Id.* at 3. According to plaintiff, her bad credit has caused her to remain unemployed. *Id.* at 2-3.

**B.  Motion to Dismiss**[6]

Defendants have moved to dismiss all three claims in the PAC.  ECF 43.  As a threshold matter, defendants argue that the PAC should not be considered because plaintiff was not granted leave to amend her Amended Complaint to add the additional claims.  ECF 43-1 at 5-6.  Although it is true that plaintiff did not seek leave to amend, under Fed. R. Civ. P. 15(a)(2), the "court should freely give leave [to amend] when justice so requires."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortgage & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).  And, because plaintiff is pro se, I must construe her submissions liberally.  *Erickson*, 551 U.S. at 94.  Therefore, I shall consider the Privacy Act Complaint.  However, for the reasons discussed below, plaintiff's claims in the PAC are subject to dismissal.

**1.**

Construing plaintiff's First Cause of Action as a claim under FOIA, it fails to state a claim for relief.  Plaintiff alleges that on "several occasions through 2013 and 2016, Plaintiff has contacted Joshua Vigil, Human Resources Representative for an update on the processing of her files."  ECF 37 at 2.  Further, plaintiff alleges that "[b]y letter enclosed dated 5/13/2016 [plaintiff] acknowledged receipt from Office of Personnel Management (OPM) . . . ."  *Id.*

However, plaintiff never identifies what documents she sought.  And, the "letter enclosed" appears to be a form response from the National Personnel Records Center to plaintiff, dated May 13, 2016, indicating: "The official personnel folder is not at this Center.  Please

---

[6] As noted, defendants style the PAC Motion as one to dismiss or, in the alternative, for summary judgment.  ECF 43.  It is unnecessary to construe the PAC Motion as one for summary judgment, because none of the causes of action in the PAC state a claim on which relief can be granted.

contact the last or current employing agency." ECF 37-1 at 1. The letter provides a referral

address for the SBA. *Id.*

Nor does plaintiff's Second Opposition provide much clarity. In it, plaintiff suggests that

she has received some of the documents requested. *See* ECF 49 at 21 ("The fact that it took SBA

two full years to provide Plaintiff with its Form SF-50 is sufficient proof here of the delay tactics

that Defendant has been using."). And, it appears that plaintiff requests entirely different

documents in her Second Opposition, *id.*: "In addition, Plaintiff request [sic] the following

document[s] through SBA FOIA office to produce more facts: affording Plaintiffs the

opportunity to adduce evidence in support of her claims." Plaintiff then requests two sets of

email communications. *Id.* at 21-22.

Defendants assert that this claim must be dismissed because (1) the Agency has sent

plaintiff her personnel file (ECF 43-1 at 7); (2) plaintiff fails to state what records she requested

(*id.* at 7-8); (3) the Agency never received a proper FOIA request from plaintiff (*id.* at 9-10); and

(4) plaintiff failed to exhaust administrative remedies. *Id.* at 10-11.

Defendants' second argument in particular supports the dismissal of this claim. "Absent

a description of the documents sought, as well as details of the refusal to turn over the requested

information, it is impossible to determine if [plaintiff] has stated a viable claim." *Carroll v. Soc.

Sec. Admin.*, WDQ-11-3005, 2012 WL 1454858, at *2 (D. Md. Apr. 24, 2012); *see also

Marshall v. Cuomo*, 192 F.3d 473, 485 (4th Cir. 1999) (affirming dismissal of a FOIA claim

where the plaintiff failed to identify the specific documents requested).

Furthermore, to the extent that plaintiff has requested other documents not mentioned in

the Privacy Act Complaint, her claim cannot be considered. "It is well-established that parties

cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

### 2.

Defendants seek dismissal of plaintiff's Second Cause of Action on the ground that its "convoluted narrative is difficult to understand," and the claim therefore fails under the pleading standard in Fed. R. Civ. P. 8(a). ECF 43-1 at 11. I agree. It is unclear from the PAC whether plaintiff's claim is based on her transfer to Baltimore in 2013 or her inability to get a job "because of lack of training." *See* ECF 37 at 2. And, it is a mystery as to how either potential claim would implicate the Privacy Act, under which the Second Cause of Action is purported to be brought.

As a result, I shall dismiss the Second Cause of Action in the PAC, without prejudice.

### 3.

Plaintiff's Third Cause of Action, for "Character Defamation," also must be dismissed. Defendants assert that the claim fails because plaintiff has named an improper defendant. ECF 43-1 at 11-12. According to defendants, plaintiff must bring any claim for damages as a result of the negligent or wrongful act of a federal employee under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"). And, defendants insist, the only proper defendant in an FTCA action is the United States, not an individual federal employee such as Knox. ECF 43-1 at 12.

In the alternative, defendants argue that even if plaintiff had brought her Third Cause of Action against the United States, the claim would be barred by sovereign immunity because the FTCA does not allow claims based on libel or slander. ECF 43-1 at 12; *see* 28 U.S.C. § 2680(h).

In my view, it is not clear that plaintiff's Third Cause of Action is in fact a claim of defamation, although plaintiff styles it as such. For one, plaintiff does not allege any defamatory

act.  *See* ECF 37 at 2-3; *see also, e.g.*, *Norman v. Borison*, 418 Md. 630, 645 n.10, 17 A.3d 697, 705 n.10 (2011) (reciting the elements of defamation under Maryland law).  Rather, the only act or omission on the part of defendants that plaintiff alleges is that "Knox et al failed to secure written authorization from the Bill Collectors," in violation of "section (d)(1) of the Privacy Act."  ECF 37 at 2.

Section 552a(d)(1) of Title 5 of the United States Code provides that each agency that maintains a system of records shall "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . ."  Plaintiff does not explain how or on what occasion defendants violated this provision.  Nor is it evident how the unnamed "Bill Collectors" are involved.

As pleaded, plaintiff's Third Cause of Action does not state a claim for defamation or for any violation of the Privacy Act.  Therefore, it shall be dismissed, without prejudice.

## V.    Conclusion

For the reasons stated, I shall GRANT the McMahon Motion, the Knox Motion, and the PAC Motion.  An Order follows, consistent with this Memorandum Opinion.


Date:  July 3, 2018                                              _____/s/_____
                                                                                 Ellen Lipton Hollander
                                                                                 United States District Judge